IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARIEL BALTHROPE,

      Plaintiff,               No. 2:10-cv-3003-JAM-JFM (PS)

    vs.

SACRAMENTO COUNTY OF
HEALTH AND HUMAN SERVICES,
et al.,

      Defendants.           FINDINGS & RECOMMENDATIONS

_____/

        On November 10, 2011, the court held a hearing on defendant Peter Helfer's motion to dismiss and defendants Lisa Thor[1], Rebekah Sass, Robert Wilson and Sacramento Child Advocates' ("SCA") (collectively, "the SCA defendants") motion to dismiss. Plaintiff appeared in pro per. William Krabbenhoft appeared for Peter Helfer. James Kirby appeared for the SCA defendants. Upon consideration of the motions on file in this action, discussion with plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

/////

/////

---

[1] Lisa Thor is identified as "Lisa Presley" in the complaint.

1

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings suit for violations of 42 U.S.C. §§ 1983, 1985 and 1986, as well as various state laws. Plaintiff alleges that on July 15, 2008, when she was seventeen years old, she was arrested in Sacramento County for violating curfew. Upon arrest, she was held captive by the Department of Health and Human Services ("DHHS"), after which false charges were filed against her father for sexual abuse of a child. During the juvenile dependency proceeding related to the charges filed against her father, plaintiff's court-appointed counsel was allegedly incompetent. Plaintiff was thereafter placed in foster care, her social security money was withheld by DHHS and she was repeatedly prohibited from contacting her father. Plaintiff sues numerous individuals and agencies, including the arresting officers and various social workers. Plaintiff also sues Peter Helfer, the Juvenile Dependency Court Referee, as well as the SCA defendants, her court-appointed counsel during the state juvenile dependency proceedings. Plaintiff seeks a multi-million dollar judgment in sum, including $6,000,000.00 against Helfer and $9,000,000.00 against the SCA defendants.

This action commenced November 8, 2010 and is proceeding on a first amended complaint filed January 18, 2011. On July 14, 2011, Peter Helfer filed a motion to dismiss. On July 18, 2011, the SCA defendants filed a motion to dismiss.[2] On October 13, 2011, plaintiff filed oppositions to both motions.

STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes,

---

[2] The SCA defendants have not been served with the amended complaint and have appeared voluntarily to file their motion to dismiss.

416 U.S. 232, 236 (1974).  In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Erickson</u>, 551 U.S. 89, 127 S.Ct. at 2200 (quoting <u>Bell Atlantic</u> at 554, in turn quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

## DISCUSSION

A.   Helfer's Motion to Dismiss

  Plaintiff alleges Juvenile Dependency Court Referee Peter Helfer abused his judicial discretion, maliciously prosecuted plaintiff's father and made plaintiff a ward of the State without cause.  Plaintiff seeks $6,000,000.00 in damages for violations of her Fourth and Fourteenth Amendment rights, malicious prosecution, intentional and negligent infliction of emotional distress and mental anguish.

  Helfer moves to dismiss with prejudice on the following grounds: (1) he is not a 'person' within the meaning of the Civil Rights Act because suit is brought against him in his official capacity; (2) suit against state officials is barred by the Eleventh Amendment; and (3) he has absolute judicial immunity for actions taking during the course of his judicial duties.

  It is well settled that judges and those performing judge-like functions are absolutely immune from 42 U.S.C. § 1983 damage liability for acts performed in their judicial capacities,"even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978).  An act is judicial when it is a function normally performed by a judge [and the parties] dealt with the judge in his judicial capacity."  <u>Id.</u>  A judge is subject to liability only when he or she acts in the clear absence of all jurisdiction.  <u>Id.</u>

/////

1          California Government Code section 71622 authorizes trial courts to appoint
2  subordinate judicial officers, including juvenile court referees.  California Welfare and
3  Institutions Code Sections 247.5 through 254 define juvenile court referees' powers and duties:
4  "A referee shall hear such cases as are assigned to him or her by the presiding judge of the
5  juvenile court, with the same powers as a judge of the juvenile court, except that a referee shall
6  not conduct any hearing to which the state or federal constitutional prohibitions against double
7  jeopardy apply unless all of the parties thereto stipulate in writing that the referee may act in the
8  capacity of a temporary judge."  Cal. Wel. & Inst. Code § 248.  Except for orders removing
9  minors from their homes, which require the express approval of a juvenile court judge (Id. §
10 249), all orders issued by referees become immediately effective and continue in full force and
11 effect until vacated or modified upon rehearing by order of a juvenile court judge.  Id. § 250.
12 Although a party may petition for rehearing of any referee's order by a juvenile court judge, the
13 judge may deny rehearing if the proceedings before the referee were officially transcribed.  Id.
14 § 252.  This statutory scheme authorizes a juvenile court referee in dependency proceedings to
15 make almost any order (subject to rehearing by a juvenile court judge) which a judge could
16 make.  The undersigned therefore finds that a juvenile dependency court referee is a judicial
17 officer or, at the very least, one performing judge-like functions.
18         In light thereof, Helfer is entitled to absolute immunity because the acts plaintiff
19 complains of were judicial in nature and he was not acting in the absence of all jurisdiction.  See
20 Stump, 435 U.S. at 356; see also Guerra v. County of Alameda, 163 F.3d 606, *1 (9th Cir. 1998)
21 (holding that referee in a juvenile dependency proceeding is entitled to absolute immunity).
22 Having determined that Helfer is entitled to absolute immunity, the court need not address his
23 alternative grounds for dismissal.
24         Therefore, plaintiff's claims against Helfer should be dismissed with prejudice.
25 /////
26 /////

B.     The SCA Defendants' Motion to Dismiss

    a.     Claims Against Sass and Thor

Plaintiff also sues her guardians ad litem in the state dependency proceeding, Sass and Thor, for deprivation of and reckless disregard for plaintiff's Fourth and Fourteenth Amendment rights, malicious prosecution, intimidation / subordination to perjure, failure to properly represent and, finally, causing plaintiff to be in violation of "California AB 490³." Plaintiff seeks $3,000,000.00 in damages from each of these defendants, as well as $3,000,000.00 from the owner of their employing agency, SCA, for failing to train and/or properly supervise lawyers.

The SCA defendants seek dismissal on the following grounds: (1) plaintiff fails to plead a conspiracy pursuant to 42 U.S.C. § 1985; (2) the SCA defendants cannot be held liable under 42 U.S.C. § 1983 because they did not act under color of state law; and (3) the claims against the SCA defendants are barred by absolute immunity.

    1.     Section 1983 Liability

42 U.S.C. § 1983 supplies a cause of action to a plaintiff when a person acting under the color of law deprives that plaintiff of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" There is no allegation that the SCA defendants acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). In fact, for the reasons set forth below, plaintiff cannot so allege. Accordingly, this claim should be dismissed.

    2.     Section 1985 and 1986 Liability

Plaintiff also fails to state a claim under either §§ 1985 or 1986. "Section 1985 proscribes conspiracies to interfere with certain civil rights." Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988). A section 1985 claim "must allege facts to

---

³ California Assembly Bill 490 seeks to keep foster children in their school of origin after placement in foster care. Plaintiff claims that after placement in foster care, she was forced to enroll in a new school.

5

support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." Id. "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004) (quoting Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989)).

Section 1985(1) does not extend its protection to individuals such as plaintiff. See Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 717 (9th Cir. 1981). Furthermore, the "equal protection" language of the second clause (state courts) of section 1985(2) requires "an allegation of class-based animus for the statement of a claim under that clause." Portman v. County of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993). "Congress intended the act to apply only in cases where there was racial or class-based animus." Kimble v. D.J. McDuffy, Inc., 648 F.2d 340, 347 (5th Cir.), cert. denied, 454 U.S. 1110 (1981); see Lopez v. Arrowhead Ranches, 523 F.2d 924, 928 (9th Cir. 1975) (limitation to "cases in which a deprivation of equal rights is actionable to those where the injury is class motivated"). Finally, "[t]o state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." Gillespie v. Civiletti, 629 F.2d 637, 641(9th Cir. 1980). "To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002). Plaintiff's allegations fail to meet any of these three provisions of Section 1985 liability.

"Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." Karim-Panahi, 839

1 F.2d at 626.  A violation of section 1986 thus depends on the existence of a valid claim under
2 1985.  Id.  Because there does not exist Section 1985 liability, there cannot exist Section 1986
3 liability.

          3.          Quasi-Judicial Immunity

5         The court now turns to whether plaintiff should be given leave to amend.  For the
6 following reasons, the undersigned recommends that leave to amend should be denied and the
7 SCA defendants' motion to dismiss be granted.
8         As previously discussed, judicial immunity can bar damages claims against
9 judicial officers.  In addition, the Ninth Circuit has determined that a variety of other jobs or
10 functions are an integral part of the judicial process and, therefore, entitled to absolute
11 quasi-judicial immunity.  This immunity applies to state employees responsible for the
12 prosecution of child neglect and delinquency petitions, guardians ad litem, and psychologists and
13 psychiatrists involved in the proceedings.  Babcock v. Tyler, 884 F.2d 497, 501-02 (9th Cir.
14 1989), cert. denied, 493 U.S. 1072 (1990), overruled on other grounds as recognized in Miller v.
15 Gammie, 335 F.3d 889, 892-93 (9th Cir. 2003); see also Ward v. San Diego County Dep't of
16 Soc. Sevs., 691 F. Supp. 238, 239, 241 (S.D. Cal. 1988).  Relying on Babcock, the Ninth Circuit
17 again recently confirmed that a guardian ad litem is barred from liability for claims related to
18 their conduct within the advocacy context when he or she is acting within the judicial process.
19 Safouane v. Fleck, 226 Fed. Appx. 753, 762 (9th Cir. 2007).
20         The question before the court is whether plaintiff's appointed guardians ad litem
21 were acting within the judicial process, thus rendering them immune from damages on grounds
22 of quasi-judicial immunity.  In this case, the court finds that the appointed guardians ad litem
23 were acting within the judicial process and, thus, are protected from suit by quasi-judicial
24 immunity.  In a California juvenile dependency, the court is authorized to appoint counsel to
25 protect a minor's best interests.  See Cal. Welf. & Inst. Code § 317(c).  Under that code, "[a]
26 primary responsibility of any counsel appointed to represent a child pursuant to this section shall

1  be to advocate for the protection, safety, and physical and emotional well-being of the child."
2  Counsel appointed pursuant to Section 317 "investigates, participates in presenting evidence to
3  the court, advises the court of the child's wishes, and investigates interests of the child beyond
4  the dependency." In re Charles T, 102 Cal. App. 4th 869, 878 (Cal. Ct. App. 2002). The court-
5  appointed attorney is, therefore, not an advocate in the traditional sense. Rather, she is an
6  advocate for the child and the child's best interests. Additionally, she serves to provide
7  information to the court. These duties fall squarely within the judicial process.

8        On similar facts, a sister district court has held that "[a]s guardian ad litem,
9  [appointed counsel] was acting as an extension of the court by performing the quasi-judicial
10 functions of investigating the facts and reporting to the court what placement was in [the child's]
11 best interest." Ward, 691 F. Supp. at 240. See also Smith v. DSHS, 2010 WL 4483531, *2
12 (W.D. Wash. 2010) (same). This holding is consistent with the approach of other circuits
13 regarding the conferral of quasi-judicial immunity on an appointed guardian ad litem. Kurzawa
14 v. Mueller, 732 F.2d 1456 (6th Cir. 1984); Myers v. Morris, 810 F.2d 1437, 1466-67 (8th Cir.
15 1987), abrogated by Burns v. Reed, 500 U.S. 478 (1991). The Kurzawa court stated that a
16 guardian ad litem must act in the best interests of the child he represents and such a position
17 clearly places him squarely within the judicial process." 732 F.2d at 1458. The court opined
18 that "[a] guardian ad litem must also be able to function without the worry of possible later
19 harassment and intimidation from dissatisfied parents." Id.; McKnight v. Middleton, 699 F.
20 Supp. 2d 507 (E.D.N.Y. 2010) (holding that guardian ad litem provided a crucial service to
21 family court and was entitled to absolute quasi-judicial immunity). Underlying these decisions is
22 a recognition that "the threat of civil liability is not necessary" because the "judicial system
23 provides procedural safeguards to protect against misconduct. . . ." Ward, 691 F. Supp. at
24 240-41 (citing Meyers v. Contra Costa County Dept. Of Social Services, 812 F.2d 1154, 1158
25 (9th Cir. 1987)).
26 /////

California courts "have [also] extended absolute judicial immunity to persons other than judges if those persons act in a judicial or quasi-judicial capacity." Howard v. Drapkin, 222 Cal. App. 3d 843, 853 (Cal. Ct. App. 1990). " '[N]onjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process' should be given absolute quasi-judicial immunity for damage claims arising from their performance of duties in connection with the judicial process." Id. at 857 (quoting Myers, 810 F.2d at 1466-67). In Howard, the California Court of Appeals determined that "guardians ad litem, psychologists and attorneys for children in child abuse actions" are included in the category of those who "fulfill quasi-judicial functions" such that they are entitled to quasi-judicial immunity. 222 Cal. App. 3d at 856. The Howard court followed the approach of the federal cases in determining whether such immunity was applicable. Id. at 856-57.

Here, because plaintiff's claims concern the conduct of the guardians ad litem during the underlying dependency proceedings, defendants Sass and Thor are entitled to absolute quasi-judicial immunity.

      b.      <u>Claims Against SCA and Robert Wilson</u>

Finally, plaintiff brings suit against SCA and Robert Wilson, its president, for failing to train and/or properly supervise its attorneys. Plaintiff, however, does not allege that either are state actors, a necessary prerequisite for § 1983 liability. For the reasons set forth below, the court recommends that leave to amend should be denied.

To determine whether a private actor acts under color of state law, the court evaluates whether the alleged infringement of federal rights is "fairly attributable" to the government even though committed by private actors. Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003). In terms of counsel appointed by courts in other contexts, it is well-settled that a public defender appointed to represent a criminal defendant is not a state actor and does not act under color of state law for the purposes of a Section 1983 claim. See Polk County v. Dodson, 454 U.S. 312, 325 (1981) (holding that a public defender does not act under color of state law

9

1  when performing traditional functions as counsel in a criminal proceeding); accord Miranda v.
2  Clark County, Nev., 319 F.3d 465, 468 (9th Cir. 2003) (en banc) (holding that, as a matter of
3  law, a public defender who was appointed to represent a criminal defendant in a traditional
4  lawyer role was not a state actor despite the fact that he was "paid by government funds and
5  hired by a government agency").  Additionally, courts have persuasively held that counsel
6  appointed to represent minors in state court juvenile proceedings, either as counsel or guardians
7  ad-litem, are not considered state actors for the purpose of a Section 1983 claim.  See Kirtley,
8  326 F.3d at 1092-96 (holding that a private attorney appointed by the state to represent a minor
9  in court proceedings as guardian ad litem does not act under color of state law for the purpose of
10 a Section 1983 claim); Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (per
11 curiam) (holding that a private attorney appointed by court to represent minor in state court
12 juvenile delinquency proceedings does not act under color of state law for the purpose of a
13 Section 1983 claim), cert. denied, 479 U.S. 828 (1986); Chambers v. Santa Clara County, No. C
14 05-3308 SI, 2006 WL 2433413, at *3 (N.D. Cal. Aug. 21, 2006) (unpublished) (same).
15 Similarly, a judge of this court persuasively concluded that an attorney in private practice who
16 was appointed by a court to represent children in child custody proceedings did not act under
17 color of state law for the purpose of a Section 1983 claim subsequently brought by the children's
18 parent against the appointed counsel.  Deluz v. Law Offices of Frederick S. Cohen, No. 10-
19 cv-0809 GEB DAD, 2011 WL 677914, at *4-5 (E.D. Cal. Feb. 17, 2011) (unpublished), adopted
20 by Order, Mar. 22, 2011.

21          Here, insofar as the alleged constitutional violations are concerned, the SCA
22 defendants acted as court-appointed counsel for plaintiff and represented her in connection with
23 juvenile dependency proceedings.  Such court-appointed representation does not support that the
24 SCA defendants acts were fairly attributable to the government such that they were acting under
25 color of state law.  Accordingly, the undersigned recommends that plaintiff's section 1983
26 claims against the SCA defendants be dismissed with prejudice.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant Helfer's motion to dismiss with prejudice be granted; and

2. The SCA defendants' motion to dismiss with prejudice be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 95 1 F.2d 1153 (9th Cir. 1991).

DATED: December 7, 2011.

UNITED STATES MAGISTRATE JUDGE

/014;balt3003.mtd